**SCHERING CORPORATION and Biogen, Inc., Plaintiffs,**

v.

**AMGEN INC., Defendant.**

**No. CIV.A.96–587 MMS.**

United States District Court, D. Delaware.

Oct. 9, 1998.

Steven J. Balick, and Steven T. Margolin, of Ashby & Geddes, Wilmington, Delaware; Of Counsel: Gerald Sobel, Aaron Stiefel, and Daniel DiNapoli, of Kaye, Scholer, Fierman, Hays & Handler, LLP, New York, New York; James F. Jr., Haley, of Fish & Neave, New York, New York, for plaintiffs.

Richard K. Herrmann, of Blank, Rome, Comisky & McCauley LLP, Wilmington, Delaware; Of Counsel: John J. McDonnell, Daniel A. Boehnen, and Grantland G. Drutchas, of McDonnell Boehnen Hulbert & Berghoff, Chicago, Illinois; D. Dennis Allegretti, of Burns & Levinson LLP, Boston, Massachusetts, for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Schering Corporation and Biogen, Inc. (collectively "Schering") filed a patent infringement suit against Amgen, Inc. ("Amgen") alleging Amgen infringed Biogen's U.S. Patent No. 4,530,901 entitled "Recombinant DNA Molecules and Their Use in Producing Human Interferon–Like Polypeptides" (the " '901 Patent"). Schering is Biogen's exclusive licensee. A hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), was held June 23, 1998 ("*Markman* hearing"). An Opinion and Order which issued on July 30, 1998, 18 F.Supp.2d 372 ("*Markman* Opinion"), construed seven separate aspects of language found in the claims of the '901 Patent. Schering has moved for reargument on only one of the seven claim constructions, namely, "a polypeptide of the IFN-α type" language found in Claims 1, 5, 8, 9 and 12. If the Court does not grant reargument, Schering has advised it cannot succeed on its infringement action against Amgen and will appeal the claim construction ruling.

## I. The Applicable Legal Standards

 The District of Delaware, through published case law, has developed rules that govern motions for reargument under Local Rule 7.1.5. These governing principles are simply stated: 1) reargument should be granted only when the merits clearly warrant and should never be afforded a litigant if reargument would not result in an amendment of an order, *see StairMaster Sports/Medical Products v. Groupe Procycle, Inc.,* Civ. A. No. 97–396 MMS, —— F.Supp. —— (D.Del. Sept. 3, 1998); 2) the purpose of reargument is to permit the Court to correct error without unduly sacrificing finality; 3) grant of the reargument motion can only occur in one of three circumstances: a) "where the Court has patently misunderstood a party," b) "[where the Court] has made a decision outside the adversarial issues presented to the Court by the parties," or c) "[where the Court] has made an error not of reasoning but of apprehension," *see Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1241 (D.Del.1990); and 4) a motion for reargument may not be used by the losing litigant as a vehicle to supplement or enlarge the record provided to the Court and upon which the merits decision was made unless "new factual matters *not previously obtainable* have been discovered since the issue was submitted to the Court," *id.* (emphasis added).

 A guiding principle in applying the limitations on reargument under Local Rule 7.1.5 is that a motion for reargument can never be allowed to encourage "a never ending polemic between litigants and the Court." *Pirelli Cable Corporation v. Ciena,* 988 F.Supp. 424 (D.Del.1997); *Oglesby v. Penn Mutual Life Insurance Company,* 877 F.Supp. 872, 892 (D.Del.1994), *aff'd,* 127 F.3d 1096 (3d Cir.1997). It follows that grant of reargument should be denied where the proponent simply rehashes materials and theories already briefed, argued and decided.

Because Schering has run afoul of several of these principles, reargument will be denied. Further, since, with one exception the grounds asserted for reargument merely constitute Schering's disagreement with the Court's conclusions, and the remaining ground is not a basis for reargument but rather for appeal to the Federal Circuit Court of Appeals, the Court's treatment of the various aspects of the motion will be somewhat summary. If it were otherwise, the Court itself would simply be repeating and rehashing that which is already in the July 30, 1998, *Markman* Opinion.

## II. Discussion

Schering urges six points in support of its motion for reargument:

Point I — This Court Erred by Disregarding the Use of the Term "IFN-α" in the '901 Patent Specification

Point II — The Court Erred by Not Considering the Use of the Terms "IFN-α" and "IFN-α type" in the Prosecution History

Point III — This Court Erred in Narrowing the Meaning of the Term "IFN-α type" Based on the Federal Circuit's Recent Decision in the *Digital Biometrics* Case

Point IV — Startling New Evidence that Dr. Weissmann's Deposited "4c" Insert Was a Portion of the DNA Encoding IFN–α–14 Conflicts With this Court's Reasoning as to the Meaning of "IFN-α"

Point V — This Court Erred in Interpreting the Phrase "IFN-α type" to Exclude "IFN-α"

Point VI — The Court Erred in Concluding that the Term "IFN-α type" Can Include "Incomplete" Forms of Human Leukocyte Interferon Protein

Each point, and any subargument under that point, will be discussed *seriatim*.

## Point I: This Court erred by disregarding the use of the term "IFN-α" in the '901 Patent specification

### A. Is the Determination of New Matter in the context of a *Markman* Hearing for a Judge of a Jury

■ Schering contends the Court improperly decided that reference in the specification to the IFN-α nomenclature was new matter as a matter of law, because such determinations are a province reserved for a jury. Amgen, on the other hand, argued that this section of the patent was new matter in violation of the patent statute and should not be considered. *See* Docket Item ("D.I.") 175, at 16–17. The Court held that the new matter prohibition under 35 U.S.C. § 132 must be interpreted in the same manner as the identical new matter prohibition found in 35 U.S.C. § 251, citing *Application of Oda*, 58 C.C.P.A. 1353, 443 F.2d 1200, 1203 n. 2 (C.C.P.A.1971). Because the question of whether the new matter prohibition in 35 U.S.C. § 251 has been violated has been found to be a question of law, *see Hester Industries, Inc. v. Stein, Inc.*, 142 F.3d 1472, 1479 (Fed.Cir.1998), the Court concluded that the question of whether the new matter prohibition in 35 U.S.C. § 132 has been violated is also a matter of law.

While plaintiff argues otherwise, no outstanding issue of fact existed. Rather, the prosecution history, the claim, the specification and the July 1980 *Nature*, referenced in the prosecution history, contain all the pertinent facts. In short, all the facts are uncontested and found within the intrinsic and extrinsic evidence. Further, were Schering correct that the determination of new matter in the context of a *Markman* hearing is for the jury, a logistical nightmare would evolve. For example, should the Court, during the infringement trial, be compelled to conduct a mini-trial on new matter, or alternatively, would the Court convene a separate jury prior to the infringement trial solely to have a jury determine the new matter issue? This logistical problem need not occur and, indeed, appears contrary to the teaching of *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1465 (Fed.Cir.1998) (en banc) ("[W]e therefore reaffirm that, as a purely legal question, we review claim construction *de novo* on appeal *including any allegedly fact-based questions relating to claim construction.*" (emphasis added)). The Court's conclusion on this issue is neither an error of misapprehension nor an instance of deciding an adversarial issue outside those presented to the Court by the parties. To the extent Schering disagrees with the Court's reasoning in this regard, its remedy lies with the Federal Circuit Court of Appeals.

### B. Shift from "Leukocyte Interferon" to "IFN-α"—Simple Nomenclature Change or Substantive Change

■ Schering argues the Court erred in finding the definition of interferon proteins was cell-specific during the time when the patent application for the '901 Patent was filed. However, the extrinsic evidence referenced in the specification and relied upon by the Court in its claim construction belies Schering's contention. The extrinsic evidence stated:

> Interferons will be classified into types on the basis of antigenic specificities, type designations to be alpha, beta, and gamma, corresponding to previous designations of leukocyte (Le), fibroblast (F) and type II (immune) interferons, respectively. *The old terminology of 'leukocyte', 'fibroblast', and 'immune' interferons were, by committee consensus, abolished, as they clearly were misnomers: both leukocytes and fibroblasts can produce each of these two types of interferon . . . .*

*Interferon Nomenclature*, Nature, July 10, 1980, at 110. (emphasis added). Schering claims a priority date of January 1980 with a February 1980 filing date. However, Schering has conceded the meeting upon which the *Nature* article was based did not occur until March 1980, and the *Nature* article did not come out until July 10, 1980. Schering has supplied no case authority for its somewhat astounding proposition that one of ordinary skill in the art is assumed to know of unpub-

lished decisions made by leaders in their respective fields. The Court reaffirms that July 10, 1980, was the date the new classification based upon antigenic specificities, as opposed to cell-specific criteria, was first published to the world scientific community, including those skilled in the art. Thus, when the patent application was filed in February 1980, interferon definitions were based on cell-specific criteria. Although it is true that Schering recognized in the '901 specification that leukocyte interferon produced small amounts of fibroblast interferon, and vice versa, *see* Col. 1, lines 36–43, the fact of the matter is that the definition employed at the time of the invention was still cell-specific, as the change over to the non-cell-specific nomenclature, had not occurred. In finding a change from cell-specific definitions to non-cell-specific definitions after the filing date of the '901 application, the Court did not commit an error of misapprehension and reargument on this issue is inappropriate.

### C. Leukocyte Interferon as that Term is Used in the Specification

After perusing the specification of the '901 Patent, the Court found the specification did not differentiate between different subtypes of leukocyte interferon. It followed from this conclusion that only one subspecies of alpha interferon was described and enabled in the specification. As it was undisputed that this first subspecies was later identified as IFN–α–1, only IFN–α–1 was clearly supported by the intrinsic evidence of the patent. Schering's argument goes to the Court's reasoning and is therefore an inappropriate basis for reargument. While Schering may disagree with the Court's reasoning, the Court did not misapprehend the law of claim construction, and Schering's remedy lies with the Federal Circuit Court of Appeals.

**Point II: Whether the Court improperly disregarded the prosecution history when constructing "polypeptide of the IFN-α type" where the term was not known in the art as of the claim filing date of the '901 Patent**

Schering contends the Court improperly disregarded relevant prosecution history in arriving at its claim construction of a "polypeptide of the IFN-α type." At issue is whether an inventor should be permitted to define claim terms more broadly during prosecution than they were defined on the filing date to cover rapidly occurring developments that took place after the application was filed. To accept Schering's position would mean that the addition by an applicant of a newly created term which expands the scope of the patent during patent prosecution is both logical and condoned by the patent statute. On the facts of this case, Schering expanded the definition during the prosecution of the application to encompass knowledge concededly unknown at the time of the application. It now seeks to use the newly found knowledge as a basis for claim construction. The Federal Circuit has suggested it would not countenance this type of supplementation of the patent application with new matter. *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed.Cir.1998) (inventor's meaning when specification was filed governs).

Schering relies heavily on *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1570 (Fed.Cir.1997), for the proposition that when the meaning of a claim term is not known, the prosecution history may be consulted to define the meaning and scope of that claim term. Indeed, *Eaton* does stand for the proposition that when the meaning of a dispositive claim limitation is a term unknown to those of ordinary skill in the art at the time the patent application was filed, the prosecution history may be consulted to help construct the meaning of that claim term. *See id.* at 1570.

However, *Eaton* cannot be read to support Schering's position for two reasons. First, unlike the '901 Patent application, the *Eaton* patent application set out the disputed claim term ("plastic flow temperature above 120$ F") in the specification *as originally filed*. D.I. 202, at 16. That situation is vastly different from the matter *sub judice* where neither "IFN-α" nor "IFN-α type" were included in the specification when the '901 Patent application was originally filed. The reason the terms were not included can only be gleaned from a silent record.

No one knew as of the February 4, 1980, filing date of the '901 Patent that there would be a switch from classifying interferons by cell specificity to antigenic specificities. Second, *Eaton* teaches that the prosecution history must provide a "precise definition" for the claim term before the prosecution history may be employed in defining the scope of the claim. *See Eaton*, 106 F.3d at 1570. Schering had a duty to provide for the precise definition during prosecution. It did not and as a consequence cannot, point to any part of the prosecution history where the term "IFN-α type" was precisely defined.

In the final analysis Schering urges that it be allowed to use post-filing definitions to define disputed claim terms that a person of ordinary skill in the art of reading the patent could not have understood since the classification system was not adopted or published until after the filing date. It is this fact which distinguishes *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572 (Fed.Cir.1996). In that case, unlike the case *sub judice*, the disputed term ("pusher assembly") was not only known in the art, but came into the claim language as a result of an interference proceeding. *See id.* at 1579–80. For these reasons, the Court did not misapprehend the law of claim construction in regard to the proper use of prosecution history when defining claim terms.

### Point III: Whether the Court erred in its reading of the *Digital Biometric* case

Schering contends the Court incorrectly relied on *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335 (Fed.Cir.1998). The Court's treatment of *Digital Biometrics* was straightforward:

> Because a patent applicant has the burden to "particularly point [ ] out and distinctly claim [ ] the subject matter which the applicant regards as his invention," 35 U.S.C. § 112, ¶ 2, "if the claim is susceptible to a broader and narrower meaning, and the narrow one is clearly supported by the intrinsic evidence while the broader one raises questions of enablement under § 112, ¶ 1, [a court should] adopt the narrower of the two." *See Digital Biomet-*

*rics*, 1998 WL 394371 at *6 [, 149 F.3d at 1345] (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir.1996); *Ethicon*, 93 F.3d at 1581).

> . . . .

> . . . There remains a significant question as to whether the specification does disclose and enable the production of the interferon subspecies. Specifically, although another sub-species was eventually found to exist as part of the hybridization probe carried out in the disclosure, that sub-species was not identified or isolated in the disclosure of the '901 Patent. Accordingly, because this claim language is susceptible to a broader and narrower meaning, and only the narrow one is clearly supported by the intrinsic evidence while the broader one raises questions of enablement under § 112, ¶ 1, the narrower of the two meanings must be adopted under applicable claim construction principles. *See Digital Biometrics*, 1998 WL 394371 at *6 [,149 F.3d at 1345].

*Schering Corp. v. Amgen, Inc.* (*Markman* Opinion), 18 F.Supp.2d at 391–92 (footnote omitted). Schering merely disagrees with the Courts reading and application of *Digital Biometrics*, an inappropriate basis for reargument.

### Point IV: Newly discovered evidence

Subsequent to issuance of the *Markman* Opinion, Schering learned that the DNA sequence of the 4c insert encodes IFN-α–14 rather than IFN-α–1. Schering now argues this newly discovered evidence conflicts with the Court's reasoning as to the meaning of IFN-α.

■ The first issue that must be faced is whether newly discovered, yet previously obtainable, evidence may serve as a basis for reargument. The Court concludes that it may not. First, the word "*re* argument" takes as a given that the same matter has previously been presented to the Court. Second, if newly discovered evidence were a regularly admitted basis for reargument, *Markman* hearings would turn into a never ending saga, limited only by the fertile mind of the patent litigator. Third, by definition, allowing newly discovered evidence to serve

as a basis for reargument inevitably leads to a decision based on matters not part of the pertinent record—be it a *Markman* record or a summary judgment record. Fourth, as would occur in this case, grant of a motion for reargument after issuance of a *Markman* opinion based on newly discovered evidence would necessarily lead to a new round of discovery as a prelude to a second, and perhaps more, *Markman* hearings. Fifth, the problem of "new" *Markman* evidence would not only frustrate a district court's effort to achieve finality in claim construction, but also has the potential to arise after an appellate affirmance of a claim construction adverse to a litigant who would then seek an additional round of *Markman* litigation in the district court and perhaps the appellate court. These reasons dictate that newly discovered evidence can only serve as a basis for reargument if it were truly unobtainable at the time of the *Markman* hearing.

█ An appropriate motion seeking such reargument based on previously unobtainable new evidence should explain: 1) why the evidence is in fact newly discovered evidence that could not have been obtained prior to the *Markman* hearing by the exercise of due diligence; and 2) the reasons why adherence to the prior *Markman* interpretation of claim language would be inequitable. All such explanations would have to be set out in detail supported by appropriate affidavits and exhibits.

█ The questions before this court then become whether plaintiffs' proffer of the DNA sequence of insert 4c is "in fact newly discovered evidence that could not have been obtained by the exercise of due diligence prior to the *Markman* hearing" and whether "adherence to the prior *Markman* interpretation of claim language would be inequitable."

The '901 patent identifies a series of DNA sequences that code for alpha interferon (the DNA inserts). The 4c insert, the probe used by Dr. Weissmann, the inventor of record, has been available to Schering for over 18 years for any purpose it wished, including sequencing. The record leaves one with the unmistakable belief that while not all inserts had been sequenced, Schering represented to the Court, Opening Brief on Claim Construction, D.I. 163, at 8, and to the U.S. Patent and Trademark Office, D.I. 202, Exh. 8, at 13, that it believed the Weissmann inserts coded for a single α interferon which became known as IFN–α–1. Dr. Streuli, as associate of Dr. Weissmann, believed the 4c insert had been sequenced in the early 1980's. D.I. 207, Exh. 7. Further, Gertrude M. Pfaffenbach, a scientific advisor at Schering's law firm, received the 4c insert sequence data on June 9, 1998, 13 days *before* the *Markman* hearing commenced. D.I. 200, at ¶ 4.[1] It is unknown when either Kaye, Scholer attorneys asked Dr. Greenberg to determine the DNA sequence or, for that matter, when Dr. Greenberg determined the DNA sequence of the 4c insert. What is known is that after the date it was sequenced it could not have taken more than two days to input and analyze the data and thereafter perform a search to ascertain whether the 4c insert sequence matched any of the known IFN–α sequences. *Id.* ¶ 4. Unhappily for Schering, the necessary work at the computer was not done until July 27th, on which date it was first discovered that the 4c insert DNA sequence allegedly matched not IFN–α–1 but IFN–α–14.

Given the availability to Schering of the 4c insert DNA for over 18 years, the fact that its researcher, Greenberg, determined the DNA sequence of the 4c insert at some unknown time, but in any event before June 9, 1998, and the fact that the necessary computer work to reveal the "newly discovered evidence" could have been done in two days all leads to the conclusion that the "newly discovered evidence" could have been easily discovered prior to the *Markman* hearing. Under these facts it is impossible to conclude Schering exercised due diligence to discover

---

1. According to the Pfaffenbach declaration, the Kaye, Scholer attorneys, the law firm representing Schering and Biogen, "asked Dr. Robert Greenberg, a researcher at Schering ... to determine the DNA sequence of all five of the deposited Weissmann inserts." Ms. Pfaffenbach goes on to state she was "advised that this DNA sequence information was requested by Dr. Carl Schildkraut," one of Schering's expert witnesses to be used in conjunction with his possible testimony.

that the 4c insert DNA allegedly codes on IFN-α–14.

In conclusion, the fact that the 4c insert was available for sequencing for 18 years, coupled with Schering's failure to obtain the necessary sequencing for 18 years or to do timely the necessary computer work leads to the conclusion that Schering could have obtained this evidence with due diligence, even if it were "new". The sequence was known to Schering as of June 9, 1998, while the *Markman* hearing did not take place until June 23, 1998.

In urging newly discovered evidence as a basis for reargument, Schering defends its tardiness with two arguments: 1) the evidence was being sought so an expert could prepare his report—a report not due until well after the decision on the *Markman* hearing; and 2) since Amgen had equal access to the inserts and, may in fact have had a 4c insert, Schering was somehow relieved of its responsibility to have discovered the evidence. The short answer is that Schering chose to gather information for its experts well in advance of the *Markman* hearing. The fact that it did not deem the information important until after the Court issued its *Markman* opinion is of no moment. Schering could have developed this information not only two weeks before the *Markman* hearing, but at any time during the 18 years up to the filing of and during this suit.

Schering also contends that because Amgen had the ability to access the 4c insert, Schering should be permitted to have the newly discovered evidence admitted. Acceptance of the argument would require ignoring both the illogic of that position, and the reality that Schering had the burden of proof. Schering, not Amgen, must bear the consequence of its failure to act. That it waited to analyze the 4c insert until its expert requested it to do so is of no moment.

In summary, the allegedly newly discovered evidence is not an appropriate basis upon which to grant the motion for reargument. The evidence still should not be admitted because even if it had been truly newly discovered, Schering has completely failed to show that it exercised due diligence in attempting to discover it, particularly given

that Schering had the evidence before the *Markman* hearing but simply did not go the final step so as to learn what the evidence was until after the *Markman* hearing.

**Point V: Whether the Court erred in interpreting the phrase "IFN-α type" to exclude "IFN-α"**

Schering devotes six pages in its motion for reargument brief in an effort to point out primarily by reference to varied portions of the prosecution history that the Court erred in interpreting the phrase "IFN-α type" to exclude "IFN-α." The vast majority of the cited prosecuted history took place in 1983, well after the new classification was in effect and well after it was recognized there was more than one IFN-α subspecies.

As the Court explained in its *Markman* Opinion, as of the '901 Patent application date, those skilled in the art believed IFN-α did not cover more than one subspecies of alpha interferon protein. It necessarily follows that IFN-α type did not cover more than one subspecies. In addition, the Court observed that the only claim term in the patent is "IFN-α type," not "IFN-α." The Court concluded that the claim term IFN-α by itself was absent because Schering was unable to produce the mature form of the IFN-α protein. Thus, the Court did not construe these two claim terms equivalently because it found that the use of the word "type" after IFN-α signified, to one skilled in the art reading the patent, that only an immature, fused and/or incomplete form of IFN-α had been made and used.

The most that can be said for Schering's position is that it disagrees with the Court's reading, use and interpretation of the prosecution history. Disagreement with the reasoning of the Court as has been previously rehearsed is not a basis for the grant of reargument. Accordingly, reargument on this ground will be denied.

**Point VI: Whether the Claim Language "Polypeptides of the IFN-α type" Includes Mature IFN-α**

This point is but another example of Schering disagreeing with the *reasoning* of

the Court. After extensively analyzing the intrinsic evidence of the record, the Court concluded that Schering had not described or enabled the production of the mature form of IFN-α protein, *i.e.,* without the leader (also referred to as "signal") sequence attached. Schering now attempts to argue that when producing the desired polypeptide, the recombinant DNA cells must necessarily produce only the mature form of the protein as the leader sequence would be cleaved on secretion from the cell. Nevertheless, the specification clearly refers to instances where there is a lower affinity between the antibodies directed against human leukocyte interferon and the interferon produced in the transformed E. coli bacterial host cells. *See* Col. 34, lines 50–58. In the specification, it is speculated that this outcome results because of structural variations in the interferon protein cells produced by the bacteria, including the presence of a signal sequence. *See id.* In any event, the reason why these transformed bacterial host cells may produce immature interferon proteins is irrelevant. Significantly, the fact that signal sequences are usually eliminated in human leukocyte cells is not dispositive of the issue as to whether Dr. Weissmann must have produced mature interferon proteins from bacterial cells in the '901 Patent.

If "polypeptide of the IFN-α type" were intended to include a mature IFN-α, one would expect to find a supporting disclosure in the application as filed. No such disclosure exists. Indeed, plaintiffs have conceded that none of the five deposits produced a mature interferon protein. "Indeed the specification recognized—as was, in fact, the case—that the interferon produced in E. coli by Dr. Weissmann might differ from natural interferon in that the interferon of the invention included a signal or fusion segment ...." Plaintiff's Opening *Markman* Brief, D.I. 163, at 30.

Schering might rejoin that the above-quoted language does not necessarily exclude the presence of mature IFN-α. The fact that the original application as filed was not intended to and did not include mature IFN-α is supported by the fact that Dr. Weissmann did file CIP applications which did disclose the mature sequences of at least two IFN-α subtypes, IFN-α-1 and IFN-α-2. If disclosed in the '901 Patent, why was it necessary to file the CIP application? It is clear the Court has made no error of misapprehension.

### III. Conclusion

In conclusion, Schering's six points supporting reargument are denied because of Schering's complete failure to demonstrate that the Court misunderstood Schering, made a decision outside the adversarial issues presented to the Court, or made an error, not of reasoning, but of apprehension. Further, the Court has ruled that Schering's newly discovered evidence would not be considered because it was not unobtainable through diligent efforts prior to the *Markman* hearing. An order will be entered denying Schering's motion for reargument.