BP AMOCO CHEMICAL COMPANY,
Plaintiff,

v.

SUN OIL COMPANY, FMC Corpora-
tion, and Claymont Investment
Corporation, Defendants.

No. Civ.A.00–082–RRM.

United States District Court,
D. Delaware.

April 30, 2002.

James J. Maron, Thomas C. Martin, and John P. Daniello, Maron & Marvel, P.A., Wilmington, Delaware, for plaintiff.

David J. Baldwin, Potter Anderson & Corroon, LLP, Wilmington, Delaware, Harold L. Segall, and David M. Williamson,

Beveridge & Diamond, P.C., Washington D.C., for Sunoco, Inc., successor to Sun Oil Company, and Claymont Investment Company.

Thomas S. Neuberger, Wilmington, Delaware, for FMC Corporation.

## MEMORANDUM OPINION

MCKELVIE, District Judge.

This lawsuit concerns the apportionment of environmental liabilities. Plaintiff, BP Amoco Chemical Company, is a Delaware corporation. Defendants, Sun Oil Company and FMC Corporation, are Delaware corporations. Defendant, Claymont Investment Corporation, at all times relevant to this action, was a wholly owned subsidiary of Sun.

BP Amoco has moved to alter or amend an earlier order of this court that partially granted defendants' motions to dismiss as to certain counts of the first amended complaint. By its motion, BP Amoco also seeks partial reargument of that same order. The court will consider BP Amoco's motion as a motion to reconsider its decision to dismiss certain counts of the amended complaint. This is the court's decision on plaintiff's motion.

## I. RELEVANT PROCEDURAL HISTORY

On February 9, 2000, BP Amoco filed its complaint in this action against Sun, Claymont, and FMC alleging that defendants are jointly and severally liable for contribution and indemnification of costs it incurred in connection with the settlement of an environmental contamination suit with the United States Government. BP Amoco's complaint sought relief under the following legal theories: contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of

1980 ("CERCLA"), 42 U.S.C. § 9601 et. seq.; (ii) contribution under the Delaware Hazardous Substance Cleanup Act ("HSCA"), 7 Del.C. § 9105(a); (iii) contribution under the Delaware Uniform Contribution Among Tortfeasors Law ("UCATL"), 10 Del.C. § 6302; (iv) express indemnification or contribution under agreements between the parties; (v) negligence; and (vi) breach of contract. BP Amoco also sought a judgment declaring defendants to be liable for contribution and indemnification of related costs that it may incur in the future.

On October 6, 2000, BP Amoco amended its complaint. On October 27, 2000, Sun and Claymont moved to dismiss the amended complaint. Soon thereafter, on October 30, 2000, FMC renewed its pre-amended complaint motion to dismiss the amended complaint.

On September 17, 2001, the court issued an opinion and accompanying order in which it considered and ruled on the defendants' motions to dismiss. *See BP Amoco Chemical Co. v. Sun Oil Co.*, 166 F.Supp.2d 984 (D.Del.2001). Therein the court granted in part and denied in part the defendants' motions to dismiss. The court first addressed the CERCLA and HSCA claims for direct operator liability against Sun and FMC, finding that the complaint stated a claim as to Sun, but not as to FMC. The court also dismissed BP Amoco's CERCLA and HSCA claims that were based on an alleged "partnership at will" between the parties, finding that no such relationship existed. Next, the court found that BP Amoco's claim against Sun under the Delaware Uniform Contribution Among Tortfeasors Law, 10 Del.C. § 6302(a), must be dismissed because Sun was not alleged to be a party to the Consent Decree upon which BP Amoco relied to establish liability for contribution. In addressing BP Amoco's claims for breach

of warranty, the court found that these claims must also be dismissed respectively because the warranty clauses were limited to liabilities as of the contract date and do not include future liabilities.

The court turned next to BP Amoco's claim for negligent provision of services, finding that dismissal was warranted as to these claims because BP Amoco did not plead the necessary element of physical injury. Next, the court found that BP Amoco's breach of contract claim, which was based on a Voluntary Cleanup Agreement between the parties and the State of Delaware Department of National Resources and Environmental Control, must be dismissed because BP Amoco failed to allege any contractual obligation between BP Amoco and the defendants. Instead, BP Amoco alleged only that a contract exists between defendants and the State. Last, the court found that BP Amoco's claims for declaratory relief were unripe, because BP Amoco had not yet paid response costs for any site other than the DS & G site. The court implemented these findings in an order accompanying its opinion, which dismissed the counts of BP Amoco's amended complaint that the court had determined should be dismissed.

On October 1, 2002, BP Amoco filed a motion to alter and amend the court's order. By the same motion paper, BP Amoco also moved for partial reargument of the court's order. By its motion, BP Amoco argues that (i) the court should reverse its decision that BP Amoco failed to state a CERCLA and HSCA claim against FMC for direct operator liability; (ii) the court should reverse its decision that BP Amoco's declaratory judgment claim against FMC for CERCLA and HSCA contribution is unripe; and (iii) the court should reverse its decision that BP Amoco failed to state a claim for breach of contract against Sun and FMC.

FMC filed its brief in opposition to BP Amoco's motions on October 16, 2001. Soon thereafter, on October 16, 2001, Sun filed its brief in opposition to BP Amoco's motions.[1] This is the court's decision on the motions to amend and for reargument.

## II. DISCUSSION

### A. Legal Standards Applicable to Plaintiff's Motions

#### 1. Motion to Reconsider or Amend

Motions for reconsideration,[2] as a general rule, are granted sparingly and only in limited circumstances. See Dentsply Int'l. v. Kerr Mfg. Co., 42 F.Supp.2d 385, 419 (D.Del.1999). A party bringing a motion seeking to alter or amend an order, pursuant to Fed.R.Civ.P. 59(e), must establish one of three grounds: (i) there is an intervening change in controlling law, (ii) new evidence has become available, or (iii) there is a need to correct the court's clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)). Furthermore, motions for reconsideration "should not be used to rehash arguments already briefed." Dentsply, 42 F.Supp.2d at 419.

#### 2. Motion for Reargument

Similarly, motions for reargument under Delaware Local Rule 7.1.5, are granted only in narrow circumstances. A court should only grant reargument when (i) the court has patently misunderstood a party; (ii) the court has made a decision outside of the adversarial issues presented to the court by the parties, or (iii) the court has made an error not of reasoning but of apprehension. Schering Corp. v. Amgen, Inc., 25 F.Supp.2d 293, 295 (D.Del. 1998). Like motions for reconsideration, motions for reargument cannot be granted in circumstances where the movant simply "rehashes material and theories already briefed and decided." Id. In addition, "a motion for reargument may not be used to supplement or enlarge the record" on which the court made its initial decision. Stairmaster Sports/Medical Products, Inc. v. Groupe Procycle, Inc., 25 F.Supp.2d 270, 292 (D.Del.1998). When such motions are based on meritorious grounds, however, they present the court with an opportunity to correct erroneous rulings.

### B. BP Amoco's Position

BP Amoco, by its motions, seeks reconsideration of various issues that were addressed in the court's September 17, 2001 opinion and order.

Specifically, BP Amoco first contends that the court patently misunderstood the plaintiff and erred in dismissing FMC from its CERCLA and HSCA claims for operator liability. Second, BP Amoco argues that the court misapprehended or overlooked certain facts and erred in dismissing as unripe its counts seeking de-

---

1. As explained above, BP Amoco seeks reconsideration of the court's dismissal of Count XV (relating to the alleged breach of a voluntary contract with the State of Delaware) of the First Amended Complaint with respect to both Sunoco and FMC. BP Amoco also seeks reconsideration of Counts IX and X (relating to CERCLA and HSCA declaratory judgment) only with respect to FMC. Accordingly, Sun's responsive brief addresses only the breach of contract count, while FMC's responsive brief

addresses all of BP Amoco's grounds for reargument and/or reconsideration.

2. Although the Rules do not expressly recognize motions for reconsideration, and BP Amoco has moved to alter, amend, or reargue, the court will treat BP Amoco's motion as a motion to reconsider its earlier order. It will incorporate the standards of both Rule 59 and Local Rule 7.1.5.

claratory relief. Third, BP Amoco argues that the court misapprehended certain facts and erred in dismissing its breach of contract claim against Sun and FMC.

### C. *Should the Court Reconsider its Decision to Dismiss BP Amoco's CERCLA/HSCA Claims as Against FMC?*

In reaching its decision that BP Amoco's amended complaint stated a claim for operator liability under section CERCLA or HSCA[3] against Sun, but failed to state such a claim against FMC, the court undertook a detailed review of the controlling Supreme Court case, *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), which sets forth a high standard for when parent corporations may be sued for "operator" liability under CERCLA. Thereafter, the court provided that "in order to state a claim for operator liability under CERCLA or HSCA, BP Amoco must allege that FMC or Viscose itself managed, directed, or controlled operations of the facility that were specifically related to pollution." *See Bestfoods,* 524 U.S. at 66–67, 118 S.Ct. 1876.

The court then reviewed the BP Amoco's allegations against FMC and FMC's predecessor in interest, Viscose. These allegations included FMC "participat[ing along with Sun] directly in the management of the AviSun plant and exercis[ing] environmental control over the AviSun's plants' affairs and operations," FMC "assum[ing] purchasing operations for the plant," FMC's board of directors discussing general problems at the plant, FMC taking over the medical operations of the plant from Sun, Viscose extending its Wel-

fare Plan to cover AviSun employees, and Viscose participating in various other business aspects of AviSun. Based on this review of the allegations, the court stated that "[e]ach of the facts concerning FMC and Viscose alleged in BP Amoco's complaint and amended complaint concern only the generalized involvement of FMC and its predecessor in interest, Viscose, with their subsidiary, AviSun." The court concluded that such allegations are insufficient to state a claim under *Bestfoods,* which requires direct involvement in pollution-related aspects of a CERCLA "facility." Therefore, the court found that BP Amoco failed to state a CERCLA or HSCA claim with respect to FMC.

By contrast, the court found the allegations against Sun sufficient to satisfy the *Bestfoods* standard. BP Amoco alleged that Sun's Coordinator of Pollution Abatement, Harold Elkin, was made available to AviSun during the initial phases of the AviSun polypropylene plant's start-up and operation to manage the plant's environmental compliance issues. Moreover, Elkin was involved in the initial design of the plant's sewer system, drainage system, and waste water treatment systems, and advised, counseled, and guided plant personnel with respect to those systems. Elkin was also the primary individual responsible for obtaining environmental compliance permits for the plant and was the primary liaison to the State of Delaware Water Pollution Commission and Board of Health. The court found that if BP Amoco proved that those in charge of environmental policies and activities at AviSun were acting in their capacity as

---

**3.** Under section 107(a)(2) of CERCLA, the United States may require payment for response costs associated with cleaning up industrial waste from "any person who at the time of disposal of any hazardous substance owned or operated any facility." 42 U.S.C. § 9607(a)(2). CERCLA also provides that any responsible party may seek contribution for response costs from other parties who are liable under the statute. See 42 U.S.C. § 9613(f)(1). The HSCA is the Delaware state law analog of the federal CERCLA statute.

agents of Sun, and not as agents of Avi-Sun, when they made environmental policy decisions and supervised waste management activities at the AviSun facility, it could establish that Sun "as [an] 'operator[ ],' ... themselves actually participate[d] in the wrongful conduct prohibited by [CERLA]," and therefore establish that Sun is liable under CERCLA. *See Bestfoods,* 524 U.S. at 65, 66, 118 S.Ct. 1876.

■ BP Amoco contends that while its allegations against Sun were more numerous and specific than those against FMC, its allegations against FMC sufficiently state a claim, under *Bestfoods,* that FMC is an operator liable for contribution under CERCLA and HSCA as a parent corporation acting as a facility "operator." FMC, in response, argues that the court was correct in finding that BP Amoco's allegations were insufficient and in dismissing the CERCLA claims as to them. FMC argues that BP Amoco alleges at most a generalized involvement in a subsidiary that the court found insufficient to establish liability under CERCLA.

In attempting to demonstrate that the court overlooked certain of its key allegations, BP Amoco directs the court's attention to the following allegations:

- "... FMC participated directly in the management of AviSun plants and exercised environmental control over the AviSun plants' affairs and operations." First Am.Compl., ¶ 11.[4]

- "... FMC [is a] generator of alleged hazardous substances and, by contract, agreement, or otherwise, arranged for the disposal or treatment, or arranged with a transporter for disposal or treatment, of alleged hazardous substances ... within the meaning of Section 107(a)(3)." First Am. Compl., ¶ 33, 34.

- "... FMC as [an] owner[ ], operator[ ], generator[ ] of hazardous substances, waste haulers, and waste transporters relative to the AviSun facility are ... liable under CERCLA." First Am.Compl., ¶ 99.

In comparison to the detailed allegations levied against Sun, the allegations against FMC are sparse. By way of comparison, whereas the facts underlying its allegations against Sun are set forth in detail, the allegations against FMC are conclusory. BP Amoco specifically alleged that Sun employees were actively and directly involved in the environmental policy decisions made at the AviSun plants. With respect to FMC, however, BP Amoco alleged simply that FMC "exercised environmental control over the AviSun plants' affairs and operations," is a "generator of alleged hazardous substances and, by contract, agreement, or otherwise, arranged for the disposal or treatment ... of alleged hazardous substances," and that FMC is liable under CERCLA as an owner, operator, or generator of hazardous waste.[5]

---

**4.** The original complaint stated only that: "During the period in which Sun and FMC owned AviSun stock, both Sun and FMC participated directly in the management of the AviSun plant and exercised control over the AviSun plant's affairs and operations." Pl. Compl. at ¶ 11. This allegation, which omits the word "environmental," does not state a claim against FMC, because it merely alleges that FMC had a generalized management of AviSun. The amended paragraph 11 was clearly drafted with *Bestfoods* in mind. In its original review of the complaint and the first amended complaint, and in its earlier opinion, the court overlooked the addition of the word "environmental" to paragraph 11.

**5.** Only the first in this series of allegations are factual. The last two seem to be conclusions of law that track the CERCLA statute.

These general allegations make it impossible to assess whether FMC was simply acting as a corporate parent of AviSun, and is thus shielded from CERCLA liability absent a piercing of the corporate veil, or whether FMC's involvement was sufficiently deep enough to allow for "operator liability" under CERCLA. *See Bestfoods,* 524 U.S. at 55, 66–67, 118 S.Ct. 1876 (unless the corporate veil can be pierced, a parent corporation that actively participated in, and exercised control over, the general operations of a subsidiary, without more, cannot be held directly liable under CERCLA as a facility operator). Indeed this court concluded upon this basis that, while the allegations against Sun were sufficient to state a claim, the allegations against FMC were insufficient, under the *Bestfoods* test, to state a claim that FMC, as a parent corporation, is liable for contribution under CERCLA and HSCA as a facility operator. It seemed to the court that the allegations against FMC did not allege that FMC made decisions that were "specifically related to pollution ... or ... about compliance with environmental regulations." *Id.* at 66–67, 118 S.Ct. 1876.

Upon reviewing the allegations against FMC that were pointed out in FMC's instant motion, the court notes that while BP Amoco's allegations against FMC are conclusory in nature, the notice pleading standard set forth in Federal Rule of Civil Procedure 8 does not mandate that allegations be drafted with more detail. While this court may have doubts, based on its reading of the allegations as pled, as to whether BP Amoco could survive summary judgment on whether it can satisfy the *Bestfoods* test as a matter of law, in considering a motion to dismiss, the court must give the non-moving party, BP Amoco, the benefit of the doubt. BP Amoco does allege that FMC exercised *environmental* control over AviSun and links FMC's activities to the disposal of hazardous waste.[6] The addition of the word "environmental" to that allegation was overlooked by the court in its initial opinion. The court concludes, therefore, that at this stage in the case it would be prudent to reconsider its decision to dismiss FMC and to wait to rule on this legal issue in the context of a summary judgment motion, on a fully developed factual record. While the allegations against FMC are limited and lack detail, the issue of whether FMC may be directly liable as a CERCLA operator is fact-intensive and depends on the extent of FMC's involvement in the pollution and hazardous waste disposal related activities at the AviSun plant. *See, e.g., Schiavone v. Pearce,* 77 F.Supp.2d 284, 290 (D.Conn.1999) ("the essential question is whether there is enough evidence ... to find that [defendant] managed, directed, or conducted operations specifically related to the pollution at the [allegedly polluting] plant, that is, operations having to do with

---

**6.** FMC asserts that BP Amoco's addition of the word "environmental" preceding control in paragraph 11 of its amended complaint is a transparent attempt to "allege its way around *Bestfoods.*" It argues, however, that BP Amoco's choice to allege "environmental control" and its failure to expressly allege any FMC involvement in AviSun's pollution, waste creation, or disposal activities is telling. FMC concludes that even the "environmental control" allegation is insufficient under Bestfoods and that BP Amoco's allegation did not relate to pollution, waste creation, or waste disposal because BP Amoco had no basis to make such allegations against FMC.

While the court finds FMC's argument compelling, it has concluded that in giving BP Amoco the favorable inferences it is required to give, the better course is to exercise restraint, keep FMC in the case, and revisit this matter on summary judgment. Therefore, in the context of FMC's motion to dismiss, the court will consider the shorthand term, "environmental" control, to indicate control over pollution, waste creation, and waste disposal activities.

leakage or disposal of [waste], or decisions about compliance with environmental regulations")

Therefore, the court will reverse its prior decision and allow BP to proceed against FMC for contribution under CERCLA and HSCA as a *Bestfoods* "operator." The court will revisit this issue in the summary judgment context.

D. *Should the Court Reconsider or Grant Reargument on its Decision that BP Amoco's Declaratory Claims for CERCLA/HSCA Are Unripe?*

■ BP contends that the court misapprehended the facts set forth below and consequently erred in dismissing as unripe Counts IX and X against FMC, which seek declarations of the rights and obligations of the parties. It alleges that, if taken as true, the allegations are sufficient and ripe, and properly allege BP Amoco's claim for contribution and declaratory judgment under CERCLA and HSCA on costs which BP paid.

BP points out that it alleged that it "has expended money performing various investigations under the Delaware Hazardous Substance Cleanup Act at other sites in addition to DS & G." First Am.Compl. at ¶ 50. It further alleged that those expenditures are related to the alleged generation and disposal of hazardous substances from AviSun between 1960 and 1968. *Id.* It is also alleged that in September 1997 and May and September 1998, Delaware's Department of Natural Resources and Environment Control sent notice letters to Sun and FMC identifying them as Potentially Responsible Parties and operators in respect of the New Castle Polymer Plant ("the Plant"), the Harry Wood and Denton landfills, and other unnamed waste disposal sites in Delaware where the Plants' waste was allegedly disposed. First Am.

Compl. at ¶ 29. These sites have been identified by the State, and BP alleges that it has expended significant money in response to DNREC's demands at some of these sites. Further, BP asserts that although the specific costs are not yet part of the record, these costs are ongoing and continue to mount.

In its September 18, 2001 opinion, the court reviewed certain of the allegations referred to by BP Amoco above. Specifically, it set forth that:

> BP Amoco alleges in its amended complaint that it entered into a Consent Decree with the Government to settle the DS & G Litigation and that "the amount paid by BP Amoco for response costs represented all of AviSun's liability for the period of 1960 through 1976 as to the DS & G site." Pl.'s Am.Compl. at ¶ 31. BP Amoco further alleges that DNREC "has alleged that from 1960 through 1980 AviSun and its successors generated and disposed of hazardous waste at other sites in Delaware, and has notified BP Amoco Chemical Company, Sun, and FMC of their potential liability relative to these sites." Pl.'s Am.Compl. at ¶ 29.

Those allegations state that BP Amoco paid certain response costs relating to "AviSun's liability for the period of 1960 through 1976 as to the DS & G site," and that there were outstanding allegations that BP Amoco, Sun, and FMC may have potential liability for hazardous waste that was disposed from 1960 through 1980 at other sites in Delaware.

Based on its review of these allegations, the court found, that while BP Amoco had incurred costs relating to the DS & G site, such that seeking a declaratory judgment on those counts may be proper, it had not yet incurred costs relating to the other sites in Delaware for which it seeks declaratory relief. The court thus concluded

that BP Amoco's request for declaratory relief was premature, and dismissed the counts as unripe. In making this conclusion, the court failed to credit BP Amoco's allegation in ¶ 50 of it First Amended Complaint, which alleges that:

> BP Amoco has expended money performing various investigations under the Delaware Hazardous Substance Cleanup Act at other sites in addition to DS & G. Expenditures made by BP Amoco are related to the alleged generation and disposal of hazardous substances from AviSun between 1960 through 1968.

According to BP Amoco, although these response costs are ongoing, the specific costs are not yet part of the record in this case.

As explained in the preceding section, the court has reconsidered its earlier ruling that FMC is dismissed from the case. Instead, FMC will remain in the case on theories of liability under CERCLA or HSCA. In originally addressing the ripeness of the declaratory relief claims, the court erroneously divided its view into claims involving the DS & G site and claims that involve other sites throughout Delaware. The court understood BP Amoco to be seeking declaratory relief against the defendants for other sites within Delaware, when it believed that BP Amoco had only spent money on the DS & G site cleanup. The court now realizes that this was not the case. Based on this misapprehension, in assessing the ripeness of the claims, the court concluded that the claims were not ripe.

In making this determination, however, the court overlooked the allegations, made earlier in the complaint, stating the BP Amoco had also spent money on response costs at non-DS & G sites.[7] Since the pollution at each of these sites was alleged-

ly caused by hazardous waste from AviSun plants, the court will retain as valid BP Amoco's claims for declaratory relief. If BP Amoco succeeds in establishing the defendants' liability at trial, the court should enter, pursuant to section 113(g) of CERCLA, "a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2); *see also Dant & Russell, Inc. v. Burlington Northern Railroad (In re Dant & Russell, Inc.)*, 951 F.2d 246, 249–50 (9th Cir.1991) (sections 107 and 113 "envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays, as well as a declaration that the responsible party will have continuing liability for the cost of finishing the job.").

While the court initially thought that BP Amoco had not expended money on non-DS & G sites, it is clear from provisions set forth in the first amended complaint as part of Count II—namely, paragraph 50—that BP Amoco has expended money in the cleanup of both the DS & G site and of other sites throughout Delaware that related to pollution from AviSun plant. Accordingly, for the reasons set forth in this section and the section preceding it, the court will reconsider its earlier order and reverse its dismissal of Counts IX and X First Amended Complaint.

E. *Should the Court Reconsider or Grant Reargument on its Decision to Dismiss BP Amoco's Breach of Contract Claim Against FMC?*

■ BP Amoco next asserts that contrary to the court's earlier determination,

---

7. The court may have overlooked this allegation, found in ¶ 50 of the First Amended Complaint, because it was not directly found in the counts at issue, Counts IX and X. Paragraph 50, however, is incorporated by reference in Counts IX and X.

its complaint states a claim for breach of contract (Count XV). In its September 17, 2001 opinion the court ruled that BP Amoco could not enforce the Voluntary Cleanup Agreement between the three parties to this litigation (BP Amoco, Sunoco, and FMC) and the State of Delaware in which each party allegedly agreed with the State to conduct certain preliminary investigative work relating to the operation of the AviSun polymer plant. The court granted the defendants' motions to dismiss this count of the complaint, because it concluded that BP Amoco had not alleged, as it must to state a claim for breach of contract, that a contractual obligation ran from the defendants to BP Amoco.

BP Amoco now contends that the court misapprehended the facts relating to this claim. It states that, "[b]roadly drafted in the complaint, Plaintiff alleges that Sun and FMC 'assented' to share the costs of the [feasibility study contemplated by the Voluntary Cleanup Agreement] with BP." BP now asserts that the "assent" referred to in its Complaint refers not to the actual Voluntary Cleanup Agreement, but to separate written agreements to pay BP Amoco for Sun's one-third share of the costs and FMC's one-third share of the costs, as memorialized in February 18, 1999 letters between BP Amoco and the defendants. BP Amoco reasons that because it paid the full amount owed to the State of Delaware under the Voluntary Cleanup Agreement and defendants have refused to pay their share of the costs, defendants have breached their contractual obligation to BP Amoco.

In its motion papers, BP Amoco suggests that in dismissing its breach of contract claims, the court erroneously overlooked the plaintiff's legal theory that the February 18 letters to the defendants constituted separate contracts between BP Amoco and the defendants. But, as Sun and FMC point out in their responses, BP

Amoco's complaint never mentions this letter or this legal theory. Because this legal theory was not properly pled in the complaint, BP Amoco cannot complain, in its motion seeking reconsideration or reargument, that the court misapprehended this legal theory.

In its amended complaint, BP Amoco alleged only that the Voluntary Cleanup Agreement with DNREC "[the State of Delaware]" was the basis for its breach of contract count. It clearly alleged that: "The Agreement [defined previously by BP Amoco as the Voluntary Cleanup Agreement] created a binding contractual obligation on BP Amoco, Sunoco, and FMC." First Am.Comp. at ¶ 125, 126. The court held that while the Voluntary Cleanup Agreement created obligations between the parties to this suit and the State of Delaware, it did not create a binding contractual obligation between BP Amoco and the defendants.

Although BP Amoco now argues that its use of the word "assent" in paragraph 128 of its First Amended Complaint referred to "Sun and FMC's separate written agreements from the actual [Voluntary Cleanup Agreement]," this suggestion is not supported by a fair reading of the complaint. Paragraphs 125 through 128 of the First Amended Complaint, which set forth allegations in support of BP Amoco's breach of contract claim, refer exclusively to the Voluntary Cleanup Agreement negotiated with the State of Delaware. The term "assent" in paragraph 128, therefore clearly refers to the Voluntary Cleanup Agreement and cannot be read to refer to another letter agreement that is nowhere mentioned in the complaint. Thus, BP Amoco never alleged, in its initial or amended complaint, that a separate letter agreement between itself and the defendants was at issue, or that such a letter created or evidenced contractual obligations that run between defendants and

itself. Instead, BP Amoco raises this theory for the first time in its instant motion for reconsideration.

The court understands that in the procedural posture of a motion to dismiss for failure to state a claim, under Fed. R.Civ.P. 12(b)(6), it must view the allegations of the complaint as true and draw all inferences in favor of the plaintiff. However, this obligation does not extend so far as to require the court to guess at factual allegations that are not properly pled. In this case, BP Amoco never alleged that contractual obligations arose from any agreement other than the Voluntary Cleanup Agreement. As the court stated in its original opinion, dismissal of the breach of contract claim is required because "BP Amoco has failed to allege any contractual obligation between BP Amoco and the defendants." Nothing has changed to cause the court to reconsider or change its mind that BP Amoco has failed to adequately plead its breach of contract claim. Moreover, the court will not allow BP Amoco to supplement its complaint through argument on reconsideration. Therefore, because the court ruled in the original opinion that BP Amoco's allegations were insufficient to state a breach of contract claim, the court will deny BP Amoco's motion to reconsider or reargue its dismissal of the breach of contract count.

III. *CONCLUSION*

The court will grant in part and deny in part BP Amoco's motion. The court will grant BP Amoco's motion and reconsider its dismissal of Counts IX and X of the First Amended Complaint. However, the court will deny BP Amoco's motion to reconsider its dismissal of Count XV.