**In re DANT & RUSSELL, INC., et al.,**

**DANT & RUSSELL, INC.,**
**et al., Appellant,**

v.

**BURLINGTON NORTHERN RAILROAD**
**CO., Appellee.**

**DANT & RUSSELL, INC., et al.,**
**Appellant/Cross–Appellee,**

v.

**BURLINGTON NORTHERN RAILROAD**
**CO., Appellee/Cross–Appellant.**

Nos. 89–35422, 89–35449.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1991.

Decided Dec. 17, 1991.

Harry H. Schneider, Jr., Perkins Coie, Seattle, Wash., for appellee/cross-appellant.

Christopher R. Hermann, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for appellant/cross-appellee.

Before GOODWIN, SCHROEDER and NOONAN, Circuit Judges.

GOODWIN, Circuit Judge:

This appeal arises out of the negative land value caused by industrial pollution of land leased from a railroad. Burlington Northern ("BN") filed a claim against the bankruptcy estate of Dant & Russell ("D & R"), seeking reimbursement for incurred and expected cleanup costs of a site owned by BN and leased to D & R. The bankruptcy court awarded BN approximately $7 million of the $14 million requested. Tenants other than D & R had also contributed contaminants to the site during more than fifty years of use. Both parties appealed. We affirm the bankruptcy court's division of liability between the parties. We reverse the award to BN of cleanup costs not yet incurred. We remand for further accounting of costs incurred.

Since 1958, BN has owned an industrial site in Oregon which it has leased to various tenants, all of whom used the site for chemically treating wood. Earlier owners of the site had also leased the land to similar users. D & R, a tenant of BN, conducted its wood treatment operations between 1971 and 1983. In November, 1982, D & R filed for bankruptcy under Chapter 11 of the Bankruptcy Code.

In 1985, the Environmental Protection Agency ("EPA") ordered BN to conduct "Immediate Removal and Stabilization Activities" at the site. BN spent approximately $1 million in complying with the order. While the EPA reserved the right to take additional action against BN, it has not to date required BN to take actions other than those demanded by the order.

In 1985, BN filed a proof of claim in D & R's bankruptcy case, requesting reimbursement from D & R for the funds it had spent on complying with the EPA order, as well as funds for future cleanup. BN's claim is under § 9607(a)(4)(B) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq. (1988). In total, BN is seeking $14,235,700 from D & R: approximately $1 million for incurred cleanup costs and the remainder for future cleanup.

The bankruptcy court found that BN's CERCLA claim was not barred by 11 U.S.C. § 502(e)(1)(B). However, the court found that BN was not entitled to recover from the bankrupt the entire $14 million plus it was seeking. Apportioning liability for the cleanup costs, the court declared D & R liable for $7,402,564 of the total amount and ordered D & R to pay BN this amount.

On appeal, D & R admits substantial liability under CERCLA. Moreover, D & R does not contest "approximately $780,000" of the bankruptcy court's award. D & R concedes that BN actually incurred this amount in conducting the initial cleanup. D & R's argument on appeal concerns the bankruptcy court's award of future cleanup costs. D & R argues that because BN has not yet incurred these costs, the court should have disallowed BN's claim for $14 million plus under § 502(e)(1)(B).

BN argues that under its CERCLA claim, the bankruptcy court was not permitted to apportion liability. BN further argues that even if division of liability was permissible, the one chosen by the bankruptcy court was incorrect. Finally, BN claims that it is entitled to administrative

priority for cleanup costs associated with contamination deposited by D & R after D & R filed for bankruptcy in 1982. Both parties were asserting claims that were too broad.

## I. *Disallowance Under § 502(e)(1)(B)*

■ Section 502(e)(1)(B) of the Bankruptcy Code provides that:

[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that ... such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

A claim will be disallowed under § 502(e)(1)(B) only if (1) the claim is for reimbursement or contribution; (2) the party asserting the claim is liable with the debtor on the claim of a creditor; and (3) the claim is contingent at the time of allowance or disallowance. *See, e.g., In re Provincetown–Boston Airlines, Inc.,* 72 B.R. 307, 309 (Bankr.M.D.Fla.1987).

■ Finding that BN's CERCLA claim was non-contingent, the bankruptcy court allowed the claim. Because we find that BN's claim fails to satisfy the co-liability requirement, we need not reach the question of contingency.

The co-liability requirement—that the claimant be "liable with" the debtor on the claim of a third party "creditor"—illuminates the central purpose of § 502(e)(1)(B). The contingency requirement does not explain the purpose of this section. Section 502(c) permits the estimation of contingent or unliquidated claims so that delay in the administration of the estate may be avoided. Accordingly, § 502(e)(1)(B) was drafted to "preven[t] competition between a creditor and his guarantor for the limited proceeds in the estate." S.Rep. No. 95–989, 95th Cong., 2nd Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851. *See also 3 Collier on Bankruptcy* ¶ 502.05 (15th ed. 1990) (explaining that § 502(e)(1)(B) applies to claims of secondarily liable entities where-

as § 502(c) applies to claims of the debtor's creditors).

The concerns addressed by § 502(e)(1)(B) are not implicated in this case because third parties are not competing over D & R's funds for cleanup. BN's claim against these funds arises from no external legal compulsion—there is no third party creditor here. This fact is evident from the nature of BN's CERCLA claim.

Section 9607(a) of CERCLA provides, in relevant part:

[T]he owner and operator of a ... facility, [and] any person who at the time of disposal owned or operated any facility at which ... hazardous substances were disposed of ... shall be liable for

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe ...; [and]

(B) any other necessary costs of response incurred by any other person....

Section 9607(a) allows the state to recover from a responsible party costs it incurs in cleaning up a hazardous site. *See, e.g., United States v. Wade,* 577 F.Supp. 1326 (E.D.Pa.1983); *Ohio ex rel. Brown v. Georgeoff,* 562 F.Supp. 1300 (N.D.Ohio 1983). It is also well-settled that § 9607(a)(1–4)(B) permits a private party to recover from a responsible party response costs it incurs itself in conducting cleanup pursuant to CERCLA—even absent intervention by the state. *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 892 (9th Cir.1986).

The CERCLA private right of action encourages voluntary private action to remedy environmental hazards. In this way, it furthers CERCLA's goal of responding to hazardous situations quickly. EPA arm-twisting is not a prerequisite for filing a § 9607(a)(4)(B) claim. *See id.*

In this case, BN is seeking to recover the cost of future cleanup. Having complied with the original EPA order to conduct specified cleanup tasks, at a cost of less than $1 million, BN now seeks funding to perform further cleanup operations to finish the job. This latter cleanup has not

been ordered by the EPA. When and if it is accomplished, it very well might be at the instigation of BN. Thus, with respect to it's § 9607(a)(4)(B) claim, there is no third party to whom BN is "liable with" D & R. The cases cited by D & R in arguing this point do not support its position. Each case involved an underlying claim by a third party against the party who was in BN's position in this case. *See In the Matter of Baldwin–United Corp.*, 55 B.R. 885 (Bankr.S.D.Ohio 1985) (brokers who filed proofs of claim against debtor were seeking contribution and indemnity in light of annuity holders' claims against them); *In re Wedtech Corp.*, 87 B.R. 279 (Bankr. S.D.N.Y.1988) (former officers and directors who were suing debtor were seeking reimbursement for losses arising from claims against them by third parties); *Provincetown*, 72 B.R. at 307 (underwriter was seeking indemnification or contribution by debtor-corporation with respect to shareholder claims against the underwriter).

Accordingly, § 502(e)(1)(B) does not bar BN's § 9607(a)(4)(B) CERCLA claim against D & R. But this does not end the inquiry.

## II. *The CERCLA Claim*

### A. Allocation of the Liability Between BN and D & R

BN argues that once the bankruptcy court upheld its CERCLA claim against D & R's § 502(e)(1)(B) challenge, the court had no choice but to ascribe to D & R full liability for BN's claim. This assertion reaches too far.

> Section 9613(f)(1) of CERCLA provides: Any person may seek contribution from any other person who is liable or potentially liable under section [9607(a)], during ... any civil action under ... section [9607(a)].... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

This section applies in this case for at least three reasons: (1) BN has admitted CERCLA liability; (2) this is a civil action under § 9607(a); and (3) D & R is arguing that BN should contribute to the cleanup operations.

■ The bankruptcy court determined D & R's proportionate liability for the total cleanup costs by converting to percentage the number of years D & R operated the site out of the total number of years all tenants of BN had operated the site. Because D & R had conducted its operations for 12 of the 23 years, and because estimated cleanup costs were agreed to be about $14,235,700, the court found D & R liable for $7,402,564. For the reasons cited by the district court, we hold that the bankruptcy court did not abuse its discretion in this equitable apportionment of liability. *See In re Dant & Russell, Inc.*, No. CV 89–24, slip op. at 11–14 (Bankr.D.Or. May 8, 1989).

### B. The Award of Future Costs to BN

■ On appeal, D & R argues that the bankruptcy court erred in awarding $7,402,564 to BN for cleanup costs most of which, as yet, have not been incurred. In making this argument, D & R cites § 502(e)(1)(B). As indicated above, its reliance on this section to bar the claim is misplaced. However, support for D & R's argument is found in CERCLA itself.

Under CERCLA's scheme for private action, response costs may not be recovered when there has been no commitment of resources for meeting these costs. Section 9607(a)(4)(B) permits an action for response costs "incurred"—not "to be incurred." Moreover, CERCLA expressly provides for declaratory actions for determining liability as to future response costs. Section 9613(g)(2) provides that in actions under § 9607, "the court shall enter a declaratory judgment on liability for response costs ... that will be binding on any subsequent action or actions to recover further response costs...."

These sections envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays, as

well as a declaration that the responsible party will have continuing liability for the cost of finishing the job.

This system strikes a balance between a number of considerations. By requiring a plaintiff to take some positive action before coming to court, CERCLA ensures that the dispute will be ripe for judicial review. *See, e.g., Thompson v. Anderson Window Corp.*, No. 4–88–229, 1989 WL 2330, at *4, 1989 U.S.Dist.LEXIS 871, at *12 (D.Minn. Jan. 27, 1989). On the other hand, by not requiring plaintiffs to perform full cleanup before coming to court, and by expressly providing for declaratory judgments, CERCLA substantially reduces the risk involved in performing the cleanup. This encourages private response. *See, e.g., Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1430 (S.D.Ohio 1984); *Wade*, 577 F.Supp. at 1335. Similarly, actual cleanup is encouraged by requiring plaintiffs to incur response costs before they can recover them. Since CERCLA places no strings on the award of response costs, allowing recovery for future costs absent any binding commitment to incur these costs would leave no incentive to complete the cleanup.

This case provides no occasion for defining what "incurred" means—only what it does not mean. Here, we are presented with nothing but bare assertions by BN that BN will perform future cleanup. These assertions do not amount to response costs "incurred" under § 9607(a)(4)(B). Accordingly, the bankruptcy court erred in awarding to BN a liquidated sum for costs "incurred" beyond the costs actually incurred. We do not hold that the bankruptcy court could not enter a declaratory decree apportioning liability for costs when and if incurred. But the court could not enter a judgment for $7,402,564.00 under § 9607(a) for "incurred" costs when such costs have not been incurred.

### III.  *Administrative Priority*

BN argues that the bankruptcy court erred in failing to grant BN administrative priority for contamination caused by D & R after it filed for Bankruptcy in November 1982. The parties disagree over whether the bankruptcy court erred in finding "insufficient evidence establishing that Dant & Russell added any significant contamination to the site after the filing of Chapter 11."

In considering this issue, the district court noted:

> The record of the portion of this case now under review shows that D & R made improvements in its waste containment system in 1979, that D & R did not operate its plant during most of the postpetition period, and that its post-petition operations were limited to processing and disposing of inventory.

Slip op. at 15. Reviewing the record of this case, we agree with the district court that the bankruptcy court's findings were not clearly erroneous. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

### IV.  *Conclusion*

We affirm the decision of the bankruptcy court so far as it held that § 502(e)(1)(B) does not bar BN's CERCLA claim, that D & R was responsible for 52% of the liability for cleanup operations, and that BN's claim was not entitled to administrative priority. We reverse the court's award to BN of $7,402,564.00 for response costs BN has not yet incurred.

Noting that D & R does not contest "approximately $780,000" of the award, we remand this case for a factual determination of BN's actual incurred cleanup costs to date. To the extent that actual costs incurred may exceed the amount D & R agrees should be awarded to BN, the court should determine the current apportionment of such costs.

With regard to the cost of future cleanup, CERCLA authorizes award of these funds to BN after they are incurred. This holding does not interfere with the powers of the bankruptcy court as a court of equity to establish a trust fund if the estate has assets, or to make provision for other forms of relief "necessary or appropriate to carry out the provisions of the bankruptcy code." 11 U.S.C. § 105(a). We express no opinion on the extent of the court's discretionary powers.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.