
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TBH19, LLC,<br><br>     Debtor. | BAP No. CC-22-1026-TSG<br><br>Bk. No. 2:19-bk-23823-VZ |
| HAR-BD, LLC; HAR, LLC; HARVEY<br>BOOKSTEIN,<br><br>     Appellants,<br>v.<br>SAM S. LESLIE, Chapter 7 Trustee;<br>GLORYA KAUFMAN, Individually and<br>as Special Trustee of the Glorya Kaufman<br>Trust, Dated 3-13-92,<br>     Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Vincent Zurzolo, Bankruptcy Judge, Presiding

Before: TAYLOR, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Appellants HAR-BD, LLC, HAR, LLC, and Harvey Bookstein

("Appellants") appeal from the bankruptcy court's order approving the

---

 * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

chapter 7[1] Trustee's settlement with another creditor, Glorya Kaufman, individually and as trustee of her trust (the "Kaufman Settlement"). The Kaufman Settlement provided for mutual dismissals and releases in state court litigation and allowed Ms. Kaufman an approximately $17.7 million claim (the "Kaufman Claim"). This allowed claim includes amounts related to Debtor's obligation to indemnify her for payments on a guaranty of Debtor's debt to DBD Credit Funding ("DBD").

Before approval of the Kaufman Settlement, the Trustee settled with and paid DBD (the "DBD Settlement"). This settlement limited, but did not eliminate, Ms. Kaufman's guarantor obligation, and she continued litigation with DBD seeking to entirely avoid her obligations. She has not been successful. After the bankruptcy court approved the Kaufman Settlement and after the parties submitted their appellate briefing, the state court referee issued a decision in DBD's favor.

Appellants objected to the Kaufman Settlement, argued their view should be provided deference, and offered to litigate the claim objection to the Kaufman Claim. They did not raise § 502(e) but rather argued that, while the indemnity amount could be estimated under § 502(c), it should not be estimated until the conclusion of the Kaufman-DBD trial.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

On appeal, Appellants argue for the first time that the Kaufman Claim should have been disallowed under § 502(e)(1)(B). They further argue that the bankruptcy court erred by failing to properly analyze the factors required to approve a Rule 9019 motion, including the role of § 502(e) in the analysis, and that the bankruptcy court failed to appropriately consider their offer to litigate the claim objection.

We find that Appellants failed to raise the § 502(e) issue in bankruptcy court and waived the issue. Further, if we consider the issue as a matter of law, we find that § 502(e) did not apply because the Estate no longer had a co-obligation with Ms. Kaufman to DBD. We also find that the bankruptcy court sufficiently considered the required factors and did not abuse its discretion in approving the Kaufman Settlement. Finally, the Trustee was not required to accept an offer to litigate the claim objection without certainty that the Estate would receive benefits at least as beneficial as those under the Kaufman Settlement.

Accordingly, we find no reversible error and AFFIRM.

## FACTS[2]

### A. The Underlying Parties and Agreements

Debtor TBH19, LLC, owned extraordinary real property located in Beverly Hills, California (the "Property"). In 2015, it borrowed $40 million

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the docket. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

from DBD, secured by a senior lien on the Property. Debtor also obtained secured borrowing from Appellant HAR-BD, LLC.

Glorya Kaufman guarantied repayment of the DBD loan in a transaction that included a Reimbursement and Indemnity Agreement and a Subordination and Intercreditor Agreement (the "Guaranty Transaction"). The Reimbursement and Indemnity Agreement required Debtor to pay Ms. Kaufman an annual 3% guaranty fee on the total outstanding amount of the DBD loan. In that agreement, Debtor also broadly agreed to indemnify Ms. Kaufman for amounts paid to DBD and expenses incurred in connection with the DBD guaranty. The Intercreditor Agreement provided Ms. Kaufman with the right, but not the obligation, to purchase the DBD loan if Debtor defaulted. And, eventually, Debtor did.

## B. State Court Litigation

Litigation in state court then commenced: (1) DBD sued Ms. Kaufman; (2) Ms. Kaufman answered and cross-complained against DBD, the Debtor, and its owner; (3) the Debtor and others sued Appellants, Ms. Kaufman, DBD, and others; and (4) DBD cross-complained against Debtor, Har-BD, Ms. Kaufman, and others. The state court determined that the cases were related and ordered the parties to trial before a judicial referee.

## C. The Bankruptcy

After the filing of the state court cases, Debtor filed a chapter 11 bankruptcy petition.

**1. Ms. Kaufman's Claim**

Ms. Kaufman filed an approximately $72,927,668.00 proof of claim, comprised of: (1) at least $4,777,059.50 in accrued and unpaid guaranty fees; (2) at least $66,148,017.00 based on Debtor's indemnification obligations; and (3) at least $2,002,591.50 based on her contractual right to reimbursement of costs and fees, including attorney's fees in the bankruptcy case and the state court cases.

Debtor objected to the claim. In part, it argued that the claim should be disallowed under § 502(e)(1)(B). The bankruptcy court held its decision on the claim objection in abeyance pending resolution of the state court proceedings.

**2. Conversion, Settlement with DBD, and Sale of the Property**

The bankruptcy court later converted Debtor's case to chapter 7, and the chapter 7 trustee then settled with DBD. As relevant here, DBD agreed that the Estate could retain a portion of the Property sale proceeds as a carveout for payment of administrative expenses and unsecured claims if a prompt sale occurred; the maximum carve-out was 6.25% of the first $60 million of sale proceeds. The bankruptcy court later approved sale of the Property for $63.1 million, and the Estate received a sale carveout of $3.75 million. From the proceeds over $60 million, the Trustee paid sale related costs. After such payments, the Trustee holds an additional $560,775.62 in escrow ("Escrow Proceeds").

### 3. The Kaufman Settlement

Subsequently, the Trustee and Ms. Kaufman reached the Kaufman Settlement. The settlement allowed the Kaufman Claim as a general unsecured claim for $17,778,861.52, divided as follows: (1) guaranty fees of $4,777,059.50; (2) estimated indemnification of $10,999,210.52; and (3) attorney's fees and costs reimbursement of $2,002,591.50. She retained secured status as to the Escrow Proceeds subject to senior liens but agreed, as had the other lien holders, to allow the Estate to receive a 6.25% carve out of the $560,775, or $35,048.47 ("Escrow Carveout"). The settlement ended all pending litigation between Ms. Kaufman and the Estate with the parties bearing their own costs; the parties exchanged mutual releases; and Ms. Kaufman agreed not to object to administrative expenses.

The Trustee brought his Rule 9019 Motion ("9019 Motion") to approve the Kaufman Settlement and argued that the settlement was in the best interest of the creditors and the Estate under the factors set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), as follows:

(1) Probability of success in the litigation: The Trustee asserted that the Estate's causes of action were speculative because the relevant documents were enforceable, Ms. Kaufman had not breached any duty under them, and establishing that she damaged Debtor would be difficult.

6

(2) Difficulties in the matter of collection: The Trustee acknowledged that this factor did not support settlement.

(3) Complexity of the litigation: The Trustee noted that the litigation against Ms. Kaufman would be expensive and time-consuming and would require extensive discovery, retention of experts, and numerous witnesses. He estimated that the trial and appeal would take at least two additional years and cost the Estate several hundred thousand dollars in fees and expenses.

(4) The paramount interest of creditors: The Trustee argued that settlement would preserve assets of the Estate to distribute to creditors by eliminating further litigation costs. Further, the Trustee argued that the reduction of Ms. Kaufman's claim increased other creditors' pro rata share of Estate assets.

Appellants opposed the 9019 Motion, arguing that the Kaufman Settlement failed to provide the Estate with any valuable consideration. Rather, they posited the Trustee received the benefit of Ms. Kaufman's agreement not to object to his fees while they had to share distribution on account of an inflated claim. They argued that the primary component of the Kaufman Claim, the indemnification obligation, was contingent due to the ongoing state court litigation between Ms. Kaufman and DBD; Ms. Kaufman might successfully eliminate any liability on her guaranty. And they opined that because she did not promptly pay her obligation as a

7

guarantor, the Estate's indemnification obligations to her should be capped.

Finally, Appellants offered to assume the risk and burden of "litigating the validity and amount of Kaufman's disputed contingent claim." This offer did not include assumption of state court litigation costs and risks.

In the Trustee's reply, he focused on the *A & C Properties* factors and explained the settlement's benefits as including: (1) an $11 million discount on Ms. Kaufman's claim; (2) dismissal of Ms. Kaufman's state court claims against the Estate, (3) general releases, (4) the $35,048.47 carveout, and (5) a steep reduction in ongoing administrative expenses. The Trustee further noted that Appellants were not the only remaining unsecured creditor.

The Trustee, however, offered: "If the HAR Parties want to provide the Estate with a better offer, which will need to include general releases, the $35,048.47 carveout, the Estate's removal from the State Court Action, and the purchase of the Kaufman Claim (all aspects), then certainly the Trustee will consider it."

At the hearing on the 9019 Motion, Appellants first argued for delay given that trial in the DBD-Kaufman state court litigation was imminent. Appellants acknowledged the claim might still be contingent after trial if an appeal followed but posited that § 502(c) would permit the bankruptcy court to estimate the contingent claim against the background of a state court decision. They also floated an unworkable interpleader proposal.

Finally, they argued that their status as principal creditors required deference to their views, but they otherwise failed to address the *A & C Properties* factors.

After argument, the bankruptcy court granted the motion. It found that the Trustee's declaration addressed all *A & C Properties* factors, and, thus, he carried his burden. It also found in particular that the controversy was complex and unusual; Appellants' opposition was not supported by any evidence placing the Trustee's admissible evidence in material dispute; and Appellants were impermissibly attempting to substitute their judgment for the Trustee's.

Appellants timely appealed.

### 4. The State Court Statement of Decision

After briefing in this appeal, the Panel received the state court referee's Statement of Decision in the DBD-Kaufman litigation. The referee found Ms. Kaufman liable for DBD's outstanding loan balance, which it calculated at $10,854,319.18, plus attorney's fees and costs to be determined thereafter.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(1).

9

## ISSUES

(1) Whether Appellants waived a § 502(e) argument and, if not, whether the statute precluded the bankruptcy court's approval of the Kaufman Settlement;

(2) Whether the bankruptcy court sufficiently analyzed the factors required for settlement approval; and

(3) Whether the bankruptcy court erred in approving the settlement despite Appellants' offer to litigate the claim objection.

## STANDARD OF REVIEW

The parties, as well as this Panel, agree that the standard of review for the approval of a settlement is abuse of discretion. *In re A & C Properties*, 784 F.2d at 1380.

"To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court 'identified the correct legal rule to apply to the relief requested' and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Spark Factor Design, Inc. v. Hjelmeset (In re Open Med. Inst., Inc.)*, 639 B.R. 169, 180 (9th Cir. BAP 2022) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)). If a court "bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence," abuse of discretion

exists. *United States v. Levoy (In re Levoy)*, 182 B.R. 827, 831 (9th Cir. BAP 1995).

## DISCUSSION

**A. Section 502(e)**

Appellants first argue that § 502(e) barred approval of the settlement. The Trustee responds that Appellants waived the § 502(e) issue by failing to raise it before the bankruptcy court and that, even if considered on appeal, the bankruptcy court properly approved the settlement.

**1. Appellants waived their § 502(e) argument by failing to make it in the bankruptcy court.**

A claim is disallowable under § 502(e)(1)(B) only if: (1) the claim is for reimbursement or contribution; (2) the party asserting the claim is liable with the debtor on the claim of a creditor; and (3) the claim is contingent at the time of allowance or disallowance. In *Dant & Russell, Inc v. Burlington Northern Railroad Co. (In re Dant & Russell, Inc.)*, 951 F.2d 246, 248 (9th Cir. 1991), the Ninth Circuit explained the purpose of the section and its relationship to § 502(c):

> The co-liability requirement—that the claimant be "liable with" the debtor on the claim of a third party "creditor"—illuminates the central purpose of § 502(e)(1)(B). The contingency requirement does not explain the purpose of this section. Section 502(c) permits the estimation of contingent or unliquidated claims so that delay in the administration of the estate may be avoided. Accordingly, § 502(e)(1)(B) was drafted to "preven[t] competition between a creditor and his guarantor for the limited proceeds in the estate."

11

*Id.* (quoting S. REP. NO. 95–989, at 65 (1978)).

While Appellants argued before the bankruptcy court that the Kaufman Claim was a contingent reimbursement claim, they did not argue that the settlement should be disallowed because Ms. Kaufman and the Debtor were both liable on DBD's claim. Appellants' brief claims that "the precise issue governed by section 502(e) was argued to the Bankruptcy Court," namely that "it was premature for the Court to approve a settlement allowing the Kaufman claim precisely because it was a contingent reimbursement claim." Not so. Contingency and reimbursement are not sufficient, in isolation, for § 502(e) disallowance. Appellants waived this argument.

**2. The Panel, nonetheless, will address the merits under the exception for matters of law.**

Appellate courts generally do not consider arguments made for the first time on appeal but have discretion to do so in the case of exceptional circumstances. *El Paso Tex. v. Am. W. Airlines, Inc. (In re Am. W. Airlines), Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000). An applicable exception exists when "the issue presented is a pure question of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841–42 (9th Cir. 2021). An issue of law exists when the argument is one of statutory construction or application and when the issue does not depend on the record, or the record is fully developed. *In re Am. W. Airlines, Inc.*, 217 F.3d at 1165.

Whether § 502(e) requires disallowance of the Kaufman Claim is a question of law, and the relevant evidentiary record against which the question is decided is fully developed. Further, the Trustee had an opportunity to make his legal arguments and suffers no prejudice from the consideration of the § 502(e) issue. Indeed, the Trustee's argument that § 502(e)(1)(B) did not apply is well taken.

**3. Because co-liability for the claim did not exist at the time of the settlement, § 502(e) does not require disallowance of Ms. Kaufman's claim or reversal of the bankruptcy court's settlement approval.**

**a. The Trustee did not have a duty to raise the § 502(e) issue.**

Appellants argue that, under *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), the Trustee failed to satisfy an affirmative duty to disclose "all facts necessary for an intelligent and objective opinion" by not informing the bankruptcy court of a possible § 502(e) issue. The Panel disagrees. The Trustee did not have a duty to identify an unsupportable § 502(e) objection to his own settlement. And this is particularly true because, among other things, he was settling the Estate's already pending § 502(e) objection. Rather, Appellants should have done so, and at oral argument they so conceded.

**b. Co-liability.**

Section 502(e)(1)(B) does not apply under these facts. First, the guaranty fees and the attorney's fees never involved a co-liable party—

13

these were fees Debtor owed to Ms. Kaufman directly. Second, under the reasoning of *In re Dant & Russell, Inc.*, 951 F.2d at 248, once the Estate settled with DBD and paid DBD, Ms. Kaufman, the guarantor, was no longer "liable with" the Debtor on this claim. DBD's claims against the Estate were eliminated.

True, the Estate would remain obligated to indemnify Ms. Kaufman for amounts she eventually pays to DBD, but this was and is, as the Appellants conceded before the bankruptcy court, a contingent claim capable of estimation and allowance. The Ninth Circuit has made clear that co-liability is a requirement and represents the central purpose of § 502(e)(1)(B), not the contingency requirement. In the absence of co-liability, § 502(e) disallowance fails.

## B. Rule 9019 Approval under the *A & C Properties* Factors

We begin with the fundamental principal that "[t]he law favors compromise" in order "to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A & C Properties*, 784 F.2d at 1380–81. "[A]s long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *Id.* at 1381.

In conducting the *A & C Properties* analysis, the court "determin[es] the fairness, reasonableness and adequacy of a proposed settlement agreement" through mandatory consideration of four factors: "(a) The

14

probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* As to the final factor, the Ninth Circuit stated that the objections of creditors, while entitled to due deference, "are not controlling" in weighing the factors and determining the deciding issue—"whether the compromise is in the best interest of the bankrupt estate." *Id*. at 1382.

We further note that when engaging in this analysis, bankruptcy courts need not conduct a "mini trial on the merits," but need only "canvass the issues." *In re Open Med. Inst., Inc.*, 639 B.R. at 181. Therefore, the court need not explicitly check off each *A & C Properties* factor. Instead, it must make general findings supporting the settlement in connection with a record that supports settlement approval. The question is "whether the settlement falls below the lowest point in the range of reasonableness." *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (cleaned up).

**1. The bankruptcy court's application of the *A & C Properties* factors was sufficient.**

The bankruptcy court expressly recognized *A & C Properties* as the proper standard and made clear that it applied those factors in approving the Kaufman Settlement. It emphasized that the Ninth Circuit requires it to

15

consider "each and every factor" from *A & C Properties* in deciding a Rule 9019 motion. The bankruptcy court's awareness that the application of each factor was mandatory creates an inference that it weighed each of the factors as required. Additionally, the bankruptcy court explained that the Trustee's motion contained admissible evidence on each of the four factors, further demonstrating that it considered each factor.

Moreover, Appellants did not address or refute the Trustee's *A & C Properties* arguments as to complexity or likelihood of success in their opposition to the 9019 Motion or at the hearing. Instead, they argued for a deference that is not entitled to controlling weight.

Here, the bankruptcy court's generalized analysis is not a basis for reversible error as the record supports the court's holding.

**2. The record supports the bankruptcy court's approval of the settlement.**

Under the *A & C Properties* factors, the Kaufman Settlement was within the range of reasonableness such that it was fair and equitable.

**a. Probability of success.** This factor favored approval of the settlement. As described in the 9019 Motion and the Trustee's accompanying declaration, the Trustee's defenses to Ms. Kaufman's contract related claims were uncertain while the Trustee's affirmative claims against Ms. Kaufman were speculative. The Trustee, thus, addressed the probability of success of the state court litigation.

Appellants argue particularly that the Trustee did not address the probability of success of an objection to the claim under § 502(e); but this was reasonable. First, Appellants failed to raise a § 502(e) objection, providing no reason for the Trustee to do so. And, as already noted, the DBD Settlement rendered the statute inapplicable. Second, as the *A & C Properties* analysis does not require a mini-trial on the merits, the Trustee did not need to preemptively address every possible basis for a claim objection.

**b. Difficulty in collection.** This factor was not of particular concern to either side. The Panel agrees; it is neutral.

**c. Complexity, expense, inconvenience, and delay in the litigation involved.** The record demonstrates that this factor strongly favored approval of the settlement. This factor holds particular weight in liquidations where the goal is "obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." *Port O'Call Inv. Co. v. Blair (In re Blair)*, 538 F.2d 849, 852 (9th Cir. 1976). This case involves multiple agreements and many parties joined in an interconnected web of relationships. The Trustee estimated that the litigation would take at least two years and cost several hundred thousand dollars. Appellants offered no contrary evidence. Regarding this factor, the bankruptcy court found at the hearing that this case was complex and unusual given the underlying business history and the litigation involved. The bankruptcy court was in the best position to determine the complexity

of the litigation after having the case in front of it since 2019. The record evidences a particularly litigious case and supports the court's finding.

Appellants again argue that the Trustee did not address the complexity of the § 502(e) objection. As discussed in the context of the first factor, the Trustee was not obligated to do so; it represented only a small part of the settlement; and was not the decisive factor as argued by Appellants.

**d. Paramount interest of the creditors and deference to their reasonable views.** Appellants argue that the bankruptcy court provided no deference to their desire to litigate the Kaufman Claim even though they were "the estate's largest creditor." Appellants also argue that their interests in the proportion of the distribution conflicted with the Trustee's interest in fixing the claims register and closing the case, and the bankruptcy court was required but failed to address that conflict.

Case law makes clear that the opposing creditors' position is entitled to deference but is not controlling.

The Trustee's judgment in settling Ms. Kaufman's contingent claim was within the range of reasonableness. The Estate, and therefore creditors, received several benefits from the compromise that served as sufficient consideration: (1) Ms. Kaufman's acquiescence to the Escrow Carveout; (2) release from all claims by Ms. Kaufman in state court; (3) a reduction in existing attorney's fees claims and elimination of future claims; (4) a

significant reduction in administrative fees; and (5) a discount in the indemnification portion of the Kaufman Claim.

The record demonstrates that the settlement was reasonable. The reduction in administrative expenses by avoiding litigation was significant. And the Statement of Decision in the DBD-Kaufman litigation also supports the reasonableness of the Trustee's settlement. It requires Ms. Kaufman to pay DBD a principal amount nearly identical to the indemnity payment under the Kaufman Settlement, but it leaves that amount open to payment of fees and costs that the Kaufman Settlement eliminates.

In sum, it was not an abuse of discretion for the bankruptcy court to determine that the Kaufman Settlement's benefits outweighed the Appellants' hope for a better outcome through continued litigation.

## C. Appellants' Offer to Litigate the Claim Objection Does Not Require Reversal.

Appellants' final argument, which they characterized at oral argument as the bankruptcy court's fundamental error, is that the bankruptcy court allegedly erred under *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 292 (9th Cir. BAP 2005), by failing to permit them to bear the risk of litigating the claim objection.

The *Lahijani* Court stated: "A creditor's willingness to bear the risk and expense on behalf of the estate for litigating to recover property that would be property of the estate and that would not otherwise deleteriously

19

affect the administration of the estate is a matter that the bankruptcy court is obliged to consider when weighing a compromise that would eliminate the recovery action." *In re Lahijani*, 325 B.R. at 292. In that case, the appellants offered to purchase fraudulent transfer and turnover causes of action for a fixed amount of money plus a percentage of recovery. However, the trustee refused to consider their offer. On appeal, the Panel stated that the bankruptcy court must consider such an offer to litigate when the trustee seeks to compromise a recovery action.

*In re Lahijani*'s analysis is best viewed as limited to cases involving elimination of recovery actions through sales to the defendant. But even assuming it applies more broadly, the bankruptcy court here did not err by approving the settlement despite Appellants' offer to litigate the claim objection, because their offer did not provide a sufficiently definite and concrete benefit to the Estate. The Trustee made clear that he would entertain an offer that met certain definite requirements that insulated the Estate from the negative consequences of a loss of the Kaufman Settlement; appellants made no such offer. As they admitted at oral argument, they did not offer to make the Estate whole by neutralizing the Estate from either the need to litigate the affirmative claims and defend against the Kaufman claims, the potential loss of the Escrow carveout, or the impact of a loss due to a litigation defeat in the state court or a determination that the Kaufman claim was greater than provided in the settlement. The offer was thus of

20

insufficient economic substance to make the failure to require its acceptance a basis for reversal.

## CONCLUSION

Based on the foregoing, we AFFIRM.